# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

Carolyn Elefant, Esquire
DC Bar # 425433
Law Offices of Carolyn Elefant
1629 K Street NW Ste. 300
Washington D.C. 20006
202-297-6100                              *Attorney for Defendants*

|  |  |
|---|---|
| TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC, <br> 2800 Post Oak Boulevard <br> Houston, Texas 77251-1396 <br>          Plaintiff, <br>     v. <br><br> A PERMANENT EASEMENT FOR 0.426 ACRES AND TEMPORARY EASEMENTS FOR 0.882 ACRES OF LAND IN EAST CALN TOWNSHIP, CHESTER COUNTY, PENNSYLVANIA, TAX PARCEL NOS. 40-01-0003 AND 40-01-0007.4 <br> 325 Norwood Road <br> Downingtown, Pennsylvania 19335 <br><br> EDWARD E. & CAROLE H. KIRKBRIDE <br> Bellingman L108 <br> 1615 East Boot Road <br> West Chester, Pennsylvania 19380 <br><br> TD BANKNORTH/MERS <br> 32 Chestnut Street <br> Lewiston, Maine 04240 <br><br> AND ALL UNKNOWN OWNERS AND INTERESTED PARTIES, <br>          Defendants. | Action No. 09-CV-01396 |

1

| | |
|---|---|
| TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC, <br> 2800 Post Oak Boulevard <br> Houston, Texas 77251-1396 <br>                    Plaintiff, <br>        v. <br> <br> A PERMANENT EASEMENT FOR 0.160 ACRES AND A TEMPORARY EASEMENT FOR 0.210 ACRES OF LAND IN EAST CALN TOWNSHIP, CHESTER COUNTY, PENNSYLVANIA, TAX PARCEL NO. 40-01-0006.010 <br> 331 Norwood Drive <br> Downingtown, Pa. 19335 <br> <br> STEVE & LYNDA K. FARRELL <br> 331 Norwood Drive <br> Downingtown, Pa. 19335 <br> <br> NATIONAL CITY MORTGAGE CO. <br> c/o Corporation Service Company <br> 2704 Commerce Drive <br> Suite B <br> Harrisburg, PA 17110 <br> <br> MERRILL LYNCH CREDIT CORP. <br> 5201 Gate Parkway <br> Jacksonville, FL 32256 <br> <br> A PERMANENT  EASEMENT FOR 0.018 ACRES AND  A TEMPORARY EASEMENT FOR 0.017 ACRES OF LAND IN EAST CALN TOWNSHIP, CHESTER COUNTY, PENNSYLVANIA, TAX PARCEL NOS. 40-01-0006 <br> 333 Norwood Drive <br> Downingtown, Pennsylvania 19335 | Action No. 09-CV-01385 |

2

| | |
|---|---|
| FRIGYES & MARIA ALEJNIKOV | : |
| 333 Norwood Drive | : |
| Downingtown, Pa. 19335 | : |
| | : |
| A PERMANENT EASEMENT FOR 0.019 ACRES AND A TEMPORARY EASEMENT FOR 0.021 ACRES OF LAND IN EAST CALN TOWNSHIP, CHESTER COUNTY, PENNSYLVANIA, TAX PARCEL NO. 40-01-0006.020 | : |
| 335 Norwood Drive | : |
| Downingtown, Pa. 19335, | : |
| | : |
| DAVID M. & ANNA JONES | : |
| 335 Norwood Drive | : |
| Downingtown, Pa. 19335, | : |
| | : |
| NORTH AMERICAN MORTGAGE CO. | : |
| 1945 Old Gallows Rd. | : |
| Ste. 500 | : |
| Vienna, VA 22182-3931 | : |
| | : |
| WELLS FARGO HOME MORTGAGE, INC. | : |
| 5024 Parkway Plaza | : |
| Bldg. 7 | : |
| Charlotte, NC 28217-0000 | : |
| | : |
| WELLS FARGO BANK | : |
| 11601 N. Black Canyon Hwy. | : |
| Phoenix, AZ 85029 | : |
| | : |
| AND ALL UNKNOWN OWNERS AND INTERESTED PARTIES,      Defendants. | : |
| | : Action No. 09-CV-01402 |
| TRANSCONTINENTAL GAS PIPELINE COMPANY, LLC, | : |
| 2800 Post Oak Boulevard | : |

| | |
|---|---|
| Houston, Texas 77251-1396 | : |
|                 Plaintiff, | : |
|        v. | : |
| | : |
| A PERMANENT EASEMENT FOR 0.099 | : |
| ACRES AND A TEMPORARY EASEMENT | : |
| FOR 0.015 ACRES OF LAND IN EAST | : |
| CALN TOWNSHIP, CHESTER COUNTY, | : |
| PENNSYLVANIA, TAX PARCEL NO. 40- | : |
| 01-0006.030 | : |
| 337 Norwood Drive | : |
| Downingtown, PA 19335 | : |
| | : |
| DONALD A. & LYNETTE A. WILSON | : |
| 337 Norwood Drive, | : |
| Downingtown, PA 19335 | : |
| | : |
| AND ALL UNKNOWN OWNERS AND | : |
| INTERESTED PARTIES, | : |
|                 Defendants. | |

**DEFENDANTS BRANDYWINE FIVE CONSOLIDATED REPLY TO PLAINTIFF'S OPPOSITION TO MOTION FOR ATTORNEYS' FEES**

### I. SUMMARY OF ARGUMENT

The Brandywine Five file this reply to three specific issues raised in Plaintiffs' opposition to the Brandywine Five's motion for attorneys' fees.

First, as explained in our initial Motion, Transco falls within the definition of "United States" as used in the Relocation Act. An examination of the statute reveals that Congress used the terms "federal agency," United States and federal government

interchangeably in the original 1970 version of the Relocation Act, (*See* HR Rep. 91-1656), reprinted in U.S. Code Cong. & Admin. News 1970 at 5874-75.  When Congress amended the statute in 1987 to include "private parties who have the power to acquire property by eminent domain under federal law," in Section 4601 of the Relocation Act, it did not take the time to consider or reconcile those provisions with the language in Section 4654.

Second, the Brandywine Five did not mischaracterize Transco's abandonment decision.  Rather, we relied on Transco's filings to this court and FERC explaining changes that had taken place since the conference that lead to the dismissal of the case. (*See* Defendants' Motion, ¶11-13).   Those filings show that Transco intended to retain the coupled pipeline and go into service on November 1, 2009.

In addition, the Brandywine Five do not dispute that their actions contributed to Transco's abandonment of the case.  Were it not for the Brandywine Five, Transco would have take the Brandywine Five's property, as it did for other landowners, even it lacked two permits from the Pennsylvania Department of Environmental Protection (PADEP) to construct the pipeline over the Brandywine Five's property.   The Brandywine Five's actions kept Transco off the property and prevented the take but ultimately, it was Transco's failure to obtain the requisite permits that lead it to abandon its plans.  Thus, the case is distinguishable from *Transwestern Pipeline v. 17.19 Acres of Property*, Docket No. 2:08-cv-00033 (United States District Court, District of Arizona July 19, 2009) where the defendant Agua Fira never challenged the pipeline's authority for the take.

Third, counsel had represented the Brandywine Five as part of a larger group since February 2009.  Though that engagement ended, counsel kept in contact with

Defendant Lynda Farrell after that period. Thus, counsel believed she had in place the type of ongoing relationship that did not necessitate a formal retainer agreement, beyond informal discussions and email communications in which counsel set forth the flat fee and discussed the option of seeking attorneys fees to the extent permitted by statute.

We discuss these arguments below. All other issues raised by Transco's response have been duly addressed in the Brandywine Five's initial motion and are not repeated here.

## II.  ARGUMENT

**A.**   **Transco fits within the statutory definition of United States**

First, as explained in our initial Motion, Transco falls within the definition of "United States" as used in the Relocation Act. An examination of the statute's legislative history reveals that Congress used the terms "federal agency," United States and federal government interchangeably in the original 1970 version of the Relocation Act, (*See* HR Rep. 91-1656), reprinted in U.S. Code Cong. & Admin. News 1970 at 5874-75. Congress did not appear to view "federal agency," "federal government (the term actually used in the legislative history of the Relocation Act) and "United States" as being anything other than synonymous.

The disparity between "federal agency" and "United States" arose when Congress amended the statute the definition of "federal agency" to include "private parties who have the power to acquire property by eminent domain under federal law," in Section 4601 of the Relocation Act. Apparently, Congress did not take the time to consider or reconcile those provisions with the language in Section 4654. Prior to the amendment, the distinction did not matter, since it was understood that the United and

"federal agency" meant the same thing. Indeed, for that reason, the statute does not define the term "United States." Given that "federal agency" is the same as "United States," and Transco is indisputably included within the definition of "federal agency," Transco is properly treated as the United States for these purposes.

Transco cites *Transwestern* to support its position. However, *Transwestern* is no more binding on this court than *Tennessee Gas*, 828 F.Supp. 123 (D.R.I.), *aff'd in part and vacated in part on other grounds*, 32 F.3d 632 (1st. Cir. 1994). And in fact, the *Transwestern* court notes that it followed the Ninth Circuit's standard of statutory construction, which does not bind this court either.

**B.      Transco did abandon the proceeding**

   1. **Transco's filings show that it will put the pipeline in service on November 1, 2009 and thus, abandons this particular proceeding.**

Second, the Brandywine Five did not mischaracterize Transco's abandonment decision. Rather, we relied on Transco's filings to this court and FERC explaining changes that had taken place since the conference that lead to Transco's eventual abandonment of the case. (*See* Defendants' Motion, ¶11-13). Those filings show that Transco intended to retain the coupled pipeline and go into service on November 1, 2009. Transco may revisit the condemnation issue later on, but that would mark the start of a new proceeding. Even Transco's witness, William Bates is not willing to state more than the fact that Transco remains undecided about refilling the condemnation action. Bates Affidavit, ¶30.

The court's order does not compel a different conclusion. The order merely says that if circumstances change, the plaintiff may institute a new action. Thus, the order recognizes that currently, Transco had to abandon its action because of its inability to

obtain the required permits. If situations change, Transco can bring a new action, but it may involve different lands depending upon whatever permits Transco can obtain.

### 2. That the Brandywine Five's actions lead to the abandonment is irrelevant

The Brandywine Five do not dispute that their actions contributed to Transco's abandonment of the case. Were it not for the Brandywine Five, Transco would have take the Brandywine Five's property, as it did for other landowners, even it lacked two permits from the Pennsylvania Department of Environmental Protection (PADEP) to construct the pipeline over the Brandywine Five's property. The Brandywine Five's actions kept Transco off the property and prevented the take but ultimately, it was Transco's failure to obtain the requisite permits that lead it to abandon its plans.

In this regard, the Brandywine Five's case is entirely distinguishable from *Transwestern Pipeline v. 17.19 Acres of Property*, Docket No. 2:08-cv-00033 (United States District Court, District of Arizona July 19, 2009) where Agua Fira, the defendant landowner never challenged the pipeline's authority to take its property. Instead, Agua Fira bickered with the pipeline over the price of its property to the point where iultimately, it was cheaper for the pipeline to re-route around the Agua Fira's property than litigate over its bloated demands. It is this precisely type of litigation that the Relocation Act sought to prevent with its narrow attorneys fees provisions.

There is nothing in the Relocation Act to suggest that it was intended to deter landowners from fighting unauthorized takings efforts. Indeed, Section 4654 shows the opposite; it allows landowners to recover attorneys fees where a taking is found unauthorized by a court. Given the statute's interest in curbing attorneys fees, it would be inconsistent to award landowners attorneys fees for litigating and obtaining a judgment that an action is unauthorized, but not for a situation such as this one, where

landowners point out that an action is unauthorized and dispose of it through an abandonment by the pipeline rather than a litigated outcome.

### 3. Counsel would not receive a windfall from an attorneys fees award

Third, counsel had been representing the Brandywine Five as part of a larger group since February 2009. Though that engagement ended, counsel kept in contact with Defendant Lynda Farrell after that period and thus, had in place the type of ongoing relationship that did not necessitate a formal retainer agreement. Counsel did supply defendants with written proposals for the flat fees and discussed the possibility of recovering attorneys' fees to the extent permitted by statute. Moreover, counsel has been candid about the agreement – she did not claim to have billed the Brandywine Five for the hours submitted, but rather, characterized the agreement with her clients as one where recovery of fees would be sought as permitted by statute. Meanwhile, Transco's claims that recovery of the modest fees submitted would result in "a windfall" is chuckle-worthy. Given that counsel's fees are likely a fraction of the costs spent by plaintiff's four attorney team, it is difficult to regard them as a windfall, which connotes an unexpected and unjustified gain.

## III.  CONCLUSION

Wherefore for the foregoing reason, the Brandywine Five hereby reiterate their original request a total award of attorneys fees and costs under the Relocation Act in the amount of **$40,050.00** because of Transco's abandonment of its pipeline condemnation action.


Respectfully submitted,

*/s/ Carolyn Elefant*
_____
CAROLYN ELEFANT, ESQ

Carolyn Elefant
LAW OFFICES OF CAROLYN ELEFANT
1629 K Street N.W. Ste. 300
Washington DC 20006
202-297-6100
carolynelefant@fercfights.com

Attorney Elefant is admitted pro hac